62542. TOUCHE, INC. et al. v. DEARBORN et al.

POPE, Judge.

Appellants Touche, Inc. and Robert S. Carr and his wife Delores brought this action for breach of contract and fraud against appellees Robert R. Dearborn and his wife Marcia and Harris Fried and T. S. P., Inc. Robert and Delores Carr are both officers of Touche, Inc.; Robert Dearborn is the president of T. S. P., Inc. and Marcia Dearborn and Harris Fried are alleged to be agents of T. S. P. Both sides moved for summary judgment. Following a hearing on those motions, the trial court issued an order which granted appellees' motion insofar as it related to appellants' cause of action for fraud; all

else was denied. Appellants contend on appeal that the trial court erred in granting summary judgment on the issue of fraud.

Touche, Inc. and T. S. P., Inc. entered into a contract whereby Touche agreed to purchase from T. S. P. "a store in the business of selling all variety of signs." Upon payment under the terms of the contract, T. S. P. agreed to provide certain materials, supplies and other property needed in the business; these items were listed in the contract. T. S. P. also agreed to sublet to Touche certain premises at which the store was to be located; these premises were to be determined by mutual agreement at a later time. Additionally, Paragraph 1 of the contract provided: "Notwithstanding the terms of [T.S.P.'s] lease with its lessor in and to the subject premises, the sublease between [T.S.P.] and [Touche] shall provide, among other things, that [Touche] shall have the summary right of termination upon fifteen (15) days' written notice to [T.S.P.]. Provided, however, that this right of termination can only be exercised by [Touche] upon selling its interest to [T.S.P.] or a third party pursuant to the provisions of Paragraph Six (6) hereunder." As is here pertinent Paragraph 6 of the contract provided: "At any time during the first twelve (12) months of operation of the subject business, [T.S.P.] does hereby agree to repurchase said business from [Touche] for the sum of $12,000.00 less any profits that have been distributed to [Touche]. [Touche] shall exercise this provision by providing [T.S.P.] with fifteen (15) days' written notice of its intention to sell its interests in the subject business. T.S.P., Inc. shall have sixty (60) days from receipt of such notice in which to consummate the sale, which shall be all cash at closing."

The subject contract was contingent upon Touche obtaining adequate financing. See generally in this regard *Hader v. Howard,* 215 Ga. 252 (109 SE2d 589) (1959). Although the executed contract required Touche to pay $12,000.00, T. S. P. agreed to accept $9,500.00 when appellants learned that they would be able to borrow no more than $10,000.00. Since the parties had been unable to agree upon a suitable location for the store, at closing none of the equipment, supplies, etc. was transferred to Touche. Shortly after T. S. P. had accepted the money, difficulties arose in implementing the agreement; no lease was ever consummated between the parties. Additionally, after this time appellants contend that they discovered evidence of fraud on the part of the appellees. Immediately upon discovery of the alleged fraud and without ever having begun operations under the contract, Robert Carr telephoned Robert Dearborn and stated that he "wanted out of the agreement." Shortly thereafter appellants sent a letter to Dearborn as follows: "Pursuant to Par. # 1 of our agreement notice is hereby given that Touche, Inc.

hereby demands the return of $9,500. Notwithstanding the time specified in such para. 1, Touche, Inc. expects such monies to be returned immediately plus interest due. Touche, Inc. feels that it has been swindled out of all monies heretofore tendered to you & if the return of same is not immed. forthcoming it is our intention to pursue civil and criminal remedies."

1. The trial court concluded that appellants' letter to Robert Dearborn constituted a ratification of the contract and further that appellants had affirmed the contract subsequent to obtaining knowledge of the alleged fraud and had therefore waived any right to rescind the contract for the alleged antecedent fraud. Appellants contend on appeal that they have not waived their right to rescind the contract.

"If a contract for the sale of goods is procured by fraudulent representations of the purchaser . . ., the vendor has an election to affirm or to rescind the contract. He may sue for the price of the goods and also for damages for the fraud, these remedies being consistent and proceeding on the theory of an affirmance of the contract. If, however, he elects to rescind the contract and recapture his goods, and obtains in equity a decree adjudicating that the contract is void on account of the fraud, he can not thereafter bring an action against the vendee for damages for the fraud, such an action being founded on the procurement of the contract. The rescission of the contract on the ground of fraud is inconsistent with an action for deceit for being led into making the contract." *Bacon & Co. v. Moody,* 117 Ga. 207 (43 SE 482) (1902). In the case at bar appellants did not seek an adjudication of rescission in their complaint. Rather, appellants sought to enforce those provisions of the contract whereby their investment would be returned (Count I) and also sought damages for appellees' allegedly fraudulent representations (Count II). Moreover, the affidavit of Robert Carr and the depositions of both Robert and Delores Carr showed that appellants were seeking recovery solely pursuant to the terms of the contract.

"Generally speaking, rescission is in toto. It abrogates the contract not partially but completely. It leaves the rights of the parties and the amount of the damages, if any, to be determined, not by the rescinded contract, but by the court of equity." *Lytle v. Scottish American Mtg. Co.,* 122 Ga. 458, 466 (50 SE 402) (1905). Under the circumstances in this case, the trial court did not err in concluding that appellants had "waived" their right to rescind the contract because of appellees' alleged antecedent fraud. Accord, *Wright v. Zeigler Bros.,* 70 Ga. 501 (5a) (1883). It should be noted that this holding does not preclude appellants from obtaining a refund of their investment from appellees pursuant to the terms of the

contract.

2. The trial court, citing *Woodall v. Beauchamp,* 142 Ga. App. 543 (1) (236 SE2d 529) (1977), also concluded that appellants had ratified the contract in such a manner as to preclude their recovery on the basis of appellees' allegedly fraudulent representations. This holding was error.

In *Woodall v. Beauchamp,* supra, Woodall bought out the interest of Beauchamp and Taylor in a corporation which owned a nightclub. As part of the transaction Woodall executed an indemnity agreement releasing Beauchamp and Taylor from the obligation of guaranty on two notes which had been executed by the corporation. Shortly after his purchase Woodall discovered that Beauchamp had made certain fraudulent representations to him concerning the night club. Nevertheless, Woodall made no effort to rescind the transaction but continued to operate the nightclub for nearly a year. The aforementioned notes came into default and judgment was entered against all the guarantors thereto. Beauchamp cross-claimed against Woodall based on the indemnity agreement. Woodall then sought rescission of the indemnity agreement based on Beauchamp's fraudulent representations. This court held: "It is incumbent upon a party who attempts to rescind a contract for fraud to repudiate it promptly on discovery of the fraud. [Cits.] In the face of Woodall's year-long silence following full knowledge of the alleged fraudulent representations, the law presumes that he treated the property as his own, thus ratifying the agreement and purchase. He will be held to have waived any objection, and to be conclusively bound by the contract as if no fraud or mistake had occurred." *Id.* at 545. The case at bar is distinguishable from *Woodall* since there is no evidence that appellants in this case have attempted to invoke the equitable remedy of rescission, thereby foregoing a recovery of damages for fraud in the inducement. Rather, the evidence conclusively shows that appellants have affirmed the contract.

Even though appellants have affirmed the contract, however, they may under some circumstances be deemed to have waived recovery of damages for fraud. "When a contract is entered into by a party by reason of the fraud of the other party, there is a difference in the rules of law relating to a waiver of the right of the defrauded party to sue for damages for the fraud when the contract is affirmed, and those relating to a waiver of the right to disaffirm the contract and rescind it; and some confusion has arisen in some of the decisions by reason of this difference not being kept in view ... It can not be said that merely affirming the contract by the defrauded party will necessarily deprive him of the right to sue for damages for the fraud inducing him to make the contract, as the right to affirm the contract

and the right to sue for damages for the fraud coexist. While the defrauded party may affirm the contract and sue for damages for the fraud, this right of affirmance, with a saving of the right to sue for damages, has its limitations, in that the defrauded party, in order to preserve his right to sue for damages for the fraud, must do no act in affirming the contract, or otherwise, which waives the fraud. If the defrauded party, with knowledge of the fraud, does an act in ratifying or affirming the contract which shows his intention to abide by the contract as made, with the fraud in it, and thus waives the fraud, he can not afterwards set up the fraud and recover damages therefor. The question as to whether the defrauded party has waived the fraud is one mainly of intent." *Tuttle v. Stovall,* 134 Ga. 325, 328-329 (67 SE 806) (1910). Construing the evidence most favorably toward the party opposing the motion for summary judgment, appellants' actions in this case do not demand a finding as a matter of law that they intended to abide by the contract as made notwithstanding appellees' alleged fraud. See generally *Tuttle v. Stovall,* supra at 330-333.

3. The subject contract contained the following provision: "This agreement represents the entire understanding of the parties hereto and cannot be changed, amended or otherwise modified except by written document executed by the parties." Since appellants have elected to affirm the contract, the trial court correctly held that this provision is in full force and effect. *Condios, Inc. v. Driver,* 145 Ga. App. 537 (1) (244 SE2d 85) (1978). This provision operates to bar appellants from relying upon any representation made by appellees prior to execution of the contract and not written into the contract, said reliance being necessary to sustain an action for fraud. *Gem City Motors, Inc. v. Minton,* 109 Ga. App. 842 (2) (137 SE2d 522) (1964). However, the contract also provided that certain representations and warranties made by T.S.P. survived the closing, including one which stated that T.S.P. was "the owner of and has good and marketable title to the business and property referred to in [the contract], free and clear of all debts and encumbrances." In their complaint appellants asserted that Robert Dearborn had knowingly and intentionally misrepresented the status and availability of some of the property listed on the contract, that they had relied thereon, and that they had suffered damages as a result thereof. The record discloses a conflict in the evidence as to the truth of this assertion.

4. Based on our discussion in the foregoing divisions of this opinion, summary judgment was not authorized in favor of appellees on the issue of fraud. See *Plunkett v. Avery,* 134 Ga. App. 204 (213 SE2d 503) (1975). Therefore, we need not reach the merits of

appellants' remaining enumeration of error.

*Judgment reversed. Quillian, C. J., and McMurray, P. J., concur.*

DECIDED JANUARY 15, 1982 —
REHEARING DENIED FEBRUARY 8, 1982.

*J. Rabun Jones, Jr.,* for appellants.
*L. A. Paulk, John K. Dunlap,* for appellees.