A90A0644. CARPENTER v. CURTIS.
(395 SE2d 653)

BEASLEY, Judge.
Curtis sued Carpenter for fraud in the inducement (count one) and breach of contract (count two) arising out of the sale by Carpen-

ter to Curtis of stock issued by Millwood Mouldings, Ltd., a privately held company. Curtis sought damages in the first two counts and rescission of the contract in the third count. Defendant Carpenter moved for partial summary judgment on rescission, which was granted, and on fraud, which was denied.

His application for interlocutory review of the denial was permitted.

Carpenter owned 80 percent of Millwood, a wood molding manufacturer. The company had continuing financial problems and Carpenter loaned it over $300,000 during 1985, evidenced by promissory notes. Millwood also procured $1,250,000 in industrial revenue development bonds which were purchased by First National Bank of Columbus. The bank then loaned an amount equal to the face value of the bonds to Millwood, which loan Carpenter personally guaranteed. Despite this, Millwood's net assets were zero or less.

Carpenter determined to sell his shares and sent out solicitation letters. Curtis responded and met with Carpenter on three occasions, during which Carpenter showed Curtis the manufacturing equipment and the company's inventory and explained the company's operations.

Curtis then sent Carpenter a letter of intent which contained provision for Millwood to supply information to Curtis and provide access for him to inspect its plants, offices and records. Curtis sent his son, Dan P. Curtis, who had an accounting degree and work experience in that field, to inspect some of the current financial records of the company. The son reviewed the preliminary December 1985 financial statement. He found that some entries did not balance with Millwood's subsidiary ledgers; there were variances pertaining to accounts payable and receivable. At his request they were redone. The son then prepared the company's financial statements for January 1986, which showed a negative net worth of $86,758. Curtis himself reviewed some unaudited financial statements but otherwise did not conduct any further investigation of Millwood.

Through his attorneys, Curtis prepared a purchase and sale agreement for the stock. A merger or integration clause provided: "*Agreement Complete*; . . . This Agreement contains the entire understanding between the parties hereto with respect to the transactions contemplated hereby; all prior negotiations and agreements between the parties hereto are superseded by this Agreement; and there are no representations, warranties, understandings, or agreements other than those expressly set forth herein, except as modified in writing concurrently herewith or subsequently hereto, which writing shall be executed by duly authorized officers of Buyer and Seller, respectively."

Because of Millwood's negative net worth, purchaser Curtis re-

quired that Carpenter, as a condition for proceeding with the transaction, invest an additional $60,000 in the company at closing. On February 28, 1986, the transaction closed with Curtis purchasing 55 percent of the company's outstanding shares. As consideration, Curtis issued a letter of credit to Millwood for $150,000 and assumed 75 percent of the bank note guaranty by Carpenter, who retained 25 percent.

Curtis took control of the company and operated it for approximately 4 months when he elected to close down. Millwood had borrowed over $400,000 against the bond from First National, which called the debt due. Carpenter and Curtis honored their apportioned share of the guarantee and were assigned the security held by First National in Millwood's assets. Curtis repossessed and sold Millwood's assets at public auction, recovering some $80,000. He sold Millwood's wood inventory and foreclosed on its real property. Ten months later he sued Carpenter.

Carpenter contends that Curtis' proceeding under the contract for fraud is foreclosed because the merger clause controls, and that the trial court's ruling of no basis for rescission disposes of the count predicated upon fraud.

Two actions are available to one who was fraudulently induced by misrepresentations into entering a contract: he can affirm the contract and sue for breach or seek to rescind and sue in tort for fraud and deceit. *City Dodge v. Gardner*, 232 Ga. 766, 768 (208 SE2d 794) (1974). Accord *Brown v. Techdata Corp.*, 238 Ga. 622 (234 SE2d 787) (1977). Affirmance of the contract by the defrauded party does not necessarily deprive him of the right to sue for damages for fraud, as the right to affirm and the right to fraud damages coexist. However, he must do nothing to waive the fraud. *Touche v. Dearborn*, 161 Ga. App. 188, 191 (2) (291 SE2d 35) (1982).

One situation whereby a defrauded party accepts the contract with the fraud in it and thereby waives the fraudulent misrepresentations is where the contract contains a clause which provides in essence that no representation, promise or inducement not included in the contract shall bind any party. *Condios v. Driver*, 145 Ga. App. 537 (1) (244 SE2d 85) (1978). This is an entire agreement and the merger provision controls, preventing a fraud-in-the-inducement defense unless it can be shown that the party claiming fraud lacked knowledge of the contract's contents. *Del Mazo v. Sanchez*, 186 Ga. App. 120, 124 (366 SE2d 333) (1988). Where a purchaser affirms a contract containing a merger provision, "he is estopped from asserting that he relied upon the seller's misrepresentation and his action for fraud must fail." *Roth v. Bill Heard Chevrolet*, 166 Ga. App. 583, 584 (305 SE2d 31) (1983).

The presence of a merger clause in the underlying contract is de-

terminative if the defrauded party has not rescinded but has elected to affirm the contract. He is relegated to recovery under the contract, and the clause will prevail. If the party rescinded, the merger clause is avoided and will not prevent recovery under a tort theory. *Potomac Leasing Co. v. Thrasher*, 181 Ga. App. 883, 886 (2) (354 SE2d 210) (1987); *Del Mazo v. Sanchez*, supra at 128. Critical to rescission is the tender of benefits, the prompt restoration or offer to restore whatever the complaining party received by virtue of the contract OCGA § 13-4-60; *Brown*, supra at 626; *Manget v. Cunningham*, 166 Ga. 71, 87 (2) (142 SE 543) (1928).

These principles determine the outcome when applied to the factual situation. Carpenter asserts that Curtis is prevented from returning the parties to their pre-purchase status by his election to affirm the contract through purchasing the stock despite his misgivings about entries on the financial statements, by operating the company after learning of the alleged misrepresentations, and by closing the company and selling its assets.

Curtis, on the other hand, points out that while he might have been aware of some suspicious circumstances, it was not until after the company's operations ceased that he became fully cognizant of the extent of Carpenter's fraudulent misrepresentations because they were concealed by Carpenter's further fraud. In particular he cites that he was misled as to the value and cost of three moulders and the value of inventory items. He alludes to an offer on June 18, 1989, to rescind the contract.

Curtis does not reference the record as to the purported offer to rescind, and no June 18, 1989, offer appears in it. But there is a letter dated June 18, 1986, offering to settle and return ownership. Curtis himself so characterizes it in his deposition testimony. If this is the document Curtis addresses, it does not support the contention that he has disavowed the contract. It cannot be considered an unconditional tender of benefits to Carpenter because shortly thereafter Curtis acted under the contract by using his status as majority stockholder to force dissolution of Millwood on July 14, 1986.

Curtis reached the fork of rescission or affirmance, equivocated, and chose to use the stock for his own ends rather than to return it to Carpenter and unravel the purchase. From this point forward he was committed to reliance on the contract and in fact never made any further effort to disclaim it except when he filed his complaint and included a rescission count over a year later.

Carpenter's motion for partial summary judgment was filed on April 25, 1989, and judgment was entered on July 14. Curtis never established that, during any of this time, he ever offered to restore the status quo. The rescission count did not offer to restore Carpenter to his former status; it sought only restoration of Curtis' pre-purchase

status. He may not have known of the full extent of the alleged fraudulent misrepresentations at the time of closing, or later while he operated Millwood or even after its dissolution,[1] but this would be of no avail. He was required to act promptly and restore or offer to restore what he received under the contract. He never did.

The trial court's granting summary judgment on rescission as being without basis is uncontested and stands as final for the purposes of this appeal. *State Farm &c. Ins. Co. v. Wendler*, 120 Ga. App. 839, 842 (2) (172 SE2d 360) (1969).

With rescission no longer viable, Curtis, whether voluntarily or involuntarily, has elected to proceed under the contract. This brings into play the merger clause. Under it Curtis is "estopped from asserting that he relied upon the seller's misrepresentations and his action for fraud must fail." *Guernsey Petroleum Corp. v. Data General Corp.*, 183 Ga. App. 790, 791 (1) (359 SE2d 920) (1987). Accord *Roller-Ice v. Skating Clubs of Ga.*, 192 Ga. App. 140, 142 (384 SE2d 235) (1989); *Weaver v. ABC Bus*, 191 Ga. App. 614, 615 (1) (382 SE2d 380) (1989); *Ouseley v. Foss*, 188 Ga. App. 766, 768 (374 SE2d 534) (1988).

Together, the action taken by Curtis and the trial court's conclusion that no grounds exist for rescission result in Carpenter's entitlement to summary judgment on the fraud count.

*Judgment reversed. Deen, P. J., and Pope, J., concur specially.*

DEEN, Presiding Judge, concurring specially.

I reluctantly concur with the judgment of the majority opinion. Although the disposition of this case is controlled by the rule regarding merger clauses applied by the majority opinion, I have some reservations about the wisdom and fairness of that rule. The Supreme Court has made it clear that a merger clause does not bar an action to rescind a contract fraudulently induced, on the basis that fraud vitiates the contract, including a merger clause contained in it. *City Dodge v. Gardner*, 232 Ga. 766 (208 SE2d 794) (1974). If fraud can vitiate an entire contract where rescission is sought, perhaps our law ought to allow fraud to vitiate a merger clause where the defrauded party wishes to affirm the contract but seeks damages. In many instances, rescission is not an available remedy because a party will not be able to restore each party to their original, pre-contractual positions. In such a case, if the contract happens to contain a merger clause, which is a fairly common feature, the defrauded party will have no remedy. In a very real sense, application of this rule can sub-

---

[1] The later assertion is contradicted by the complaint. In it Curtis alleges that "[s]oon after the closing of the sale," he realized that the representations made by Carpenter had been false.

sidize iniquity.

I am authorized to state that Judge Pope joins in this special concurrence.

DECIDED JULY 3, 1990.

*Alston & Bird, John I. Spangler III*, for appellant.
*Moore & Rogers, Stephen C. Steele, David P. Oliver*, for appellee.