**Laurie B. LEE, Plaintiff-Appellant,**

v.

**The FIDELITY AND CASUALTY COMPANY OF NEW YORK, Defendant-Appellee.**

No. 76–2642.

United States Court of Appeals, Fifth Circuit.

Feb. 17, 1978.

Rehearing Denied March 29, 1978.

Hamilton Lokey, Charles M. Lokey, Atlanta, Ga., for plaintiff-appellant.

George W. Hart, James M. Poe, Atlanta, Ga., for defendant-appellee.

Before BROWN, Chief Judge, THORNBERRY, and MORGAN, Circuit Judges.

MORGAN, Circuit Judge:

Plaintiff, Laurie Lee, wife and beneficiary of the deceased, appeals from an order granting summary judgment for the defendant insurance company. The sole issue on appeal is whether summary judgment was proper. We hold that it was not.

This action was brought to recover accidental death benefits under two group insurance policies issued by the Fidelity and Casualty Company of New York. The claims arise from the death, on December 17, 1972, of the insured, Olin Lee. On that evening, according to plaintiff, she noticed nothing unusual about her husband's condition as he went to bed. When plaintiff awoke, she found her husband lying face down on the floor. He was pronounced dead on arrival at the hospital. The opinion stated in the deposition of Dr. Stivers, the medical examiner who performed the autopsy, was that Olin Lee died when his epiglottis, the small flap which normally prevents food from entering the air passage, failed as Lee regurgitated, allowing gastric acids and partially digested food particles to enter the lungs. The lung tissue was extremely swollen from stomach fluids, and severely burned by the acid. This condition prevented the deceased from inhaling sufficient amounts of oxygen, and resulted in his death by asphyxiation. Although plaintiff stated there was no indication of the consumption of alcohol by the deceased, Dr. Stivers' chemical analysis of a blood sample revealed an alcoholic concentration of .42%, significantly above the amount necessary to be considered legally intoxicated. In the opinion of Dr. Stivers, the presence of the alcohol would have had two effects. It would have caused gastritis, irritation of the stomach lining, resulting in regurgitation; it would also have had the effect of depressing or stopping normal reflex functions thus possibly causing the epiglottic malfunction. However, he further

testified that such a malfunction could be the result of other causes. Following her husband's death, Mrs. Lee filed claim for recovery under the policy. When the insurance company denied coverage under the accidental death provisions, this suit was filed. After entry of summary judgment for the defendant, plaintiff brought this appeal.

Summary judgment is proper only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We feel that there is a genuine issue of material fact in this case, and, in any event, defendant was not entitled to judgment as a matter of law.

The two policies in question both insure "against loss resulting . . . from bodily injury caused by an accident . . . ." In Georgia, to recover for death or injury caused by accidental means, the plaintiff must establish "that in the act which preceded the injury alleged to have been sustained by the insured, something unforeseen, unexpected, or unusual occurred." *Liberty National Life Insurance Co. v. Morris*, 132 Ga.App. 631, 642, 208 S.E.2d 637, 643 (1974). In this case, the plaintiff argues that the failure of the epiglottis to function properly was an accident. The trial court decided that it was not, relying primarily on *Morris, supra*, and *Life Insurance Company of Georgia v. Thomas*, 133 Ga.App. 134, 210 S.E.2d 250 (1974). Both cases were similar to the present case in that the insured asphyxiated following regurgitation. In *Morris*, the decedent was found face down next to a stream, containing in his mouth coffee ground material, which, according to expert testimony, "wasn't viable material of any kind . . . *it had to be ingested or injected from some other means than coming from the body itself*" 132 Ga. at 634, 208 S.E.2d at 639 (emphasis in original). In *Thomas*, the decedent apparently died when, after an epiglottic malfunction, his windpipe was clogged by undigested food, which the court considered to be foreign to the body. Both opinions upheld jury verdicts allowing recovery for accidental death.

From these two cases, the trial court concluded that "the terms 'accidental means' or 'caused by accident' are sufficient to put the insured on notice that he is covered only for the harmful results of unforeseeable external stimuli." In other words, the trial court understands Georgia law to impose the requirement "that the foreign object [must be] an essential component of the accidental means or act." We must reject the trial court's interpretation. Georgia, as other states, accepts the principle that insurance contracts are to be strictly construed against the insurer. *Nationwide Mutual Fire Insurance Co. v. Collins*, 136 Ga.App. 671, 222 S.E.2d 828 (1975), *see also* Ga.Code Ann. § 20–704(5) (1977 Rev.). It is clear that the insurers know how to impose a requirement that the stimulus be external. *Morris* and *Thomas* both involve policies where this was done. Where, as in this case, that additional requirement was not written into the contract, we would be very reluctant to imply such a limitation as a matter of contractual interpretation. Furthermore, we do not read *Morris* and *Thomas* to require, as a matter of law, that the stimulus in every instance be external. The insurance policies in those cases included the additional requirement that death be caused solely by "external" means. Thus, in each instance, in order to uphold the verdict, the courts were required to find an external cause; however, the opinion in *Morris* makes it clear that the requirement that the cause be external is separate and distinct from the requirement that the cause be accidental. In order to constitute accidental means, it is sufficient that the act is unforeseen, unexpected, and unusual. Only when the policy so requires must the act also be external. Thus we do not agree that defendant was entitled to judgment as a matter of law.

Finally, whether the epiglottic malfunction was unforeseen, unexpected, or unusual, and therefore constituted accidental means, whether it was merely a natural physiological reaction to the voluntary ingestion of alcohol, or whether it was the

result of other causes, is a question which should have been resolved by a jury; therefore, since we find that there is a genuine issue of material fact, this case must be remanded for trial on the merits. The order granting summary judgment to defendant is REVERSED and REMANDED.