**ESSEX INSURANCE COMPANY,**
**Plaintiff,**

v.

**NEWTON AGRI–SYSTEMS, INC. and**
**Stanley Clayton, Defendants.**

**NEWTON AGRI–SYSTEMS, INC.,**
**Defendant and Third–Party**
**Plaintiff,**

v.

**The INSURANCE HOUSE, Third–**
**Party Defendant.**

**Civ. A. No. CV690–108.**

United States District Court,
S.D. Georgia,
Statesboro Division.

June 2, 1993.

Theodore T. Carellas, Hunter, Maclean, Exley & Dunn, Savannah, GA, Gerald L. Mize, Jr., Alston & Bird, Atlanta, GA, for Essex Ins. Co.

Susan Warren Cox, Gerald M. Edenfield, Edenfield, Stone & Cox, James B. Franklin, Keith Alan McIntyre, Franklin, Taulbee, Rushing & Bunce, Statesboro, GA, for Newton Agri–Systems, Inc.

William H. Godlove, Ratchford, Hall & Godlove, Rincon, GA, Joseph Michael Hall, Ratchford, Hall & Godlove, Statesboro, GA, for Stanley Clayton.

William H. Godlove, Ratchford, Hall & Godlove, Rincon, GA, for William Clayton, Hazel Clayton.

Charles H. Brown, Becky B. Livingston, Brown & Livingston, Statesboro, GA, for Central Soya.

Wilson Randolph Smith, Newton, Smith, Durden, Kaufold & Rice, P.C., Vidalia, GA, for Ins. House.

## ORDER

BOWEN, District Judge.

Before the Court are Cross–Motions for Summary Judgment filed by Essex Insurance Company ("Essex"), Newton Agri–Systems, Inc., ("Newton"), and The Insurance House. Also before the Court is Newton's Motion for a Separate Trial on Stanley Clayton's Cross Claims. These Motions were referred to the Magistrate Judge, and, in his April 17, 1992, Report and Recommendation, ("Report and Recommendation") the Magistrate Judge recommended that Essex's Motion for Summary Judgment be granted as to all issues, that those of Newton and The Insurance House be denied, and that Newton's Motion for Separate Trial be denied. Newton and The Insurance House filed Objections. For the reasons stated below, although the Magistrate Judge's conclusions as to Newton's Motion for a Separate Trial and Essex's duty to indemnify for or defend against claims for punitive damages are adopted, genuine issues of material fact warrant denial of all Cross–Motions for Summary Judgment.

## I. BACKGROUND

Essex, Newton's insurer, brought this action seeking a declaratory judgment on an insurance policy it issued to Newton. Newton is a grain and feed distributor. The claims that prompted Essex's filing of this action arise from Newton's sale and delivery of allegedly contaminated corn to Stanley Clayton, William Clayton, and Hazel Clayton (the "Claytons"). More specifically, soon after the Claytons fed the Newton corn to their dairy herd, aflatoxin poisoning was found in the herd's milk and a number of the herd became ill and died. Attributing those problems to aflatoxin contamination of the Newton corn, the Claytons turned to Newton.

When the Claytons approached Newton concerning possible aflatoxin contamination in the corn, Newton investigated. After some delay, Newton turned to Essex. Following its inquiry into the incident, Essex filed this declaratory action alleging that the Claytons' claims against Newton are excluded from coverage under Newton's policy

("Policy") because the Policy specifically excludes coverage for such claims.

Essex's Declaratory Action prompted a lively response. Newton filed a Counterclaim against Essex claiming fraudulent misrepresentation of coverage and breach of contract to provide coverage. Newton also filed a Third–Party Claim against The Insurance House—an insurance brokerage house through which Newton's insurance agent, R.L. Toole, obtained the Policy—asserting fraudulent representation, negligent representation, and breach of contract. The Claytons filed a Cross–Claim against Newton and a Counterclaim against Essex alleging breach of warranties concerning the corn, tortious failure to test the corn, tortious placing of contaminated corn on the market, and "stubborn litigiousness."

Essex, Newton, and The Insurance House each filed a Motion for Summary Judgment under Fed.R.Civ.P. 56. Essex's Motion seeks judgment on three points: (1) on its direct declaratory claim that it has no duty to insure, defend, or indemnify Newton against the Claytons' claims, (2) on Newton's Counterclaim, and (3) on the Claytons' Counterclaims. Newton's motion requests judgment in its favor as to Essex's declaratory claim. Finally, The Insurance House moves for summary judgment in its favor as to Newton's third-party claims.

The Magistrate Judge reviewed the Cross–Motions for Summary Judgment, a Motion to Dismiss Newton's Cross–Claim against Central Soya, Inc. (subsequently dismissed by separate Order), and Newton's Motion for a Separate Trial as to Clayton's Cross–Claim against it. After doing so, the Magistrate Judge filed his Report and Recommendation in which he recommended that Essex's Motion for Summary Judgment be granted, that those of Newton and The Insurance House be denied, that Newton's Cross–Claim against Central Soya be granted, and, finally, that Newton's Motion for a Separate Trial be denied. As noted already, Newton and The Insurance House filed timely objections to the Magistrate Judge's Report and Recommendation.

## II. SUMMARY JUDGMENT STANDARD

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The applicable substantive law identifies which facts are material in the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

"The movant bears the initial burden to show, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). When the *moving* party has the burden of proof at trial, that party must carry its burden at summary judgment by presenting evidence affirmatively showing that, "on all the essential elements of its case . . ., no reasonable jury could find for the non-moving party." *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1438 (11th Cir.1991) (en banc). When the *non-moving* party has the burden of proof at trial, the moving party may carry its burden at summary judgment either by presenting evidence negating an essential element of the non-moving party's claim or by pointing to specific portions of the record which demonstrate that the non-moving party cannot meet its burden of proof at trial, *see Clark,* 929 F.2d at 606–608 (explaining *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); merely stating that the non-moving party cannot meet its burden at trial is *not* sufficient, *Clark,* 929 F.2d at 608. Any evidence presented by the movant must be viewed in the light most favorable to the non-moving party. *Adickes,* 398 U.S. at 157, 90 S.Ct. at 1608.

If—and *only* if—the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark,* 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. *Morris v. Ross,* 663

F.2d 1032, 1033–34 (11th Cir.1981), *cert. denied,* 456 U.S. 1010, 102 S.Ct. 2303, 73 L.Ed.2d 1306 (1982). Rather, the non-moving party must respond by affidavits or as otherwise provided in Fed.R.Civ.P. 56. "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. A genuine issue of material fact will be said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510.

The clerk has given the non-moving party notice of the summary judgment motion, the right to file affidavits or other materials in opposition, and of the consequences of default; thus, the notice requirements of *Griffith v. Wainwright,* 772 F.2d 822 (11th Cir. 1985), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration. The Court will proceed to review the applicable substantive law and inquire whether the moving party—and, if necessary, the non-moving party—has carried its burden as set forth above. *See Clark,* 929 F.2d at 609 n. 9.

## III. ANALYSIS

Although the Cross–Claim, Third–Party Claim, and two Counterclaims in this action present a tangle of pleadings, the issues fall into two general categories: those concerning whether the Claytons' injuries are covered under the Policy and those that arise if

they are not.[1] In addressing coverage under the Policy, the questions are whether it embraces injuries stemming from the sale of contaminated grain and, if so, whether Newton gave Essex timely notice of the "occurrence" as required under the Policy's terms. The questions that arise if the policy is found to exclude coverage concern allegedly fraudulent representations as to coverage, breach of contract to provide coverage, and the proper measure of damages for those claims. Because a jury must decide whether the Policy embraces injuries stemming from the sale of defective grain, the remaining questions are not reached.

Turning first to whether the Claytons' claims are covered, the parties' dispute concerns what is included within "Completed Operations and products liability Insurance"—one of the Policy's two primary classifications of coverage.[2] More specifically, the parties dispute whether the Claytons' injuries are embraced by the Policy's completed operations coverage, and, if not, whether the Policy excludes coverage for products liability insurance.[3] Essex's position is that completed operations and products liability are distinct types of coverage whose areas of embrace do not overlap, that the Claytons' injuries fall under the products category, and that the Policy expressly excludes products coverage. Newton and The Insurance House, of course, disagree. They contend Newton's delivering and helping to

---

1. An additional issue addressed in the Report and Recommendation is whether Essex must indemnify for or defend against claims for punitive damages. That issue need not be addressed here, however, because the Report and Recommendation found that the Policy specifically excludes coverage for such damages and neither Newton, The Insurance House, nor Clayton objected to that conclusion.

2. The other primary classification of coverage is "Manufacturers' and Contractors' Liability Insurance." That classification of coverage unequivocally excludes coverage for those hazards included within the Completed Operations and Products Liability Hazards: "This insurance [Manufacturers' and Contractors' Liability Insurance] does not apply ... (p) to bodily injury or property damage included within the completed operations hazard or the products hazard." *See* Policy, form L6408. Consequently, the Claytons'

claims cannot be included within Manufacturers' and Contractors' Liability Insurance Coverage because, as explained below, they fall within the Products Hazard.

3. "Products liability insurance" refers to coverage for injuries included within the "products hazard," as defined in the Policy. The Policy provides:

"products hazard" includes bodily injury and property damage arising out of the Named Insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the Named Insured and after physical possession of such products has been relinquished to other....

*Policy Definitions Page (attached to this Order as Appendix A).* [Editor's Note: Appendix A omitted from publication.]

unload and mix the corn invokes coverage under completed operations, and, even if it does not, that products liability coverage is included in the Policy and embraces the Claytons' injuries.

 In resolving the parties' Policy disputes, Georgia's substantive law applies. Under Georgia law, insurance policies are written contracts, so they are subject to the rules of construction for contracts. *Dixon v. Midland Ins. Co.,* 168 Ga.App. 319, 322, 309 S.E.2d 147, 150 (1983). When deciding whether the terms of a contract, or an insurance policy, are ambiguous, the reviewing court must apply a three-step analysis: (1) the court must decide whether the contract's language is ambiguous; (2) if it is, the court must then apply the applicable rules of construction; (3) and, if the ambiguity remains, the question must be submitted to a jury. *Travelers Ins. Co. v. Blakey,* 255 Ga. 699, 700, 342 S.E.2d 308, 309 (1986); *Travelers Ins. Co. v. Blakey,* 180 Ga.App. 520, 520, 349 S.E.2d 474, 476 (1986) (on remand), *cert. denied,* (January 15, 1987). An ambiguity is present in an insurance policy when its language "is so confusing that an average policyholder cannot make out the boundaries of coverage. . . ." *Georgia Baptist Children's Home and Family Ministries, Inc. v. Essex Ins. Co.,* 207 Ga.App. 346, 427 S.E.2d 798 (1993).

The Claytons' claims are not included within completed operations coverage because they neither arose out of operations nor were related to representations or warranties concerning operations, as is required by the Policy's definition of completed operations.[4] The completed operations hazard is defined in the Policy as including:

4. For a review of the completed operations and products liability hazards historical background see *Nielson v. Travelers Indem. Co.,* 174 F.Supp. 648 (D.Iowa 1959), *aff'd,* 277 F.2d 455 (8th Cir. 1960).

5. The Claytons' claims are not included within the completed operations hazard for the reasons identified below; however, it is noteworthy that the above-quoted definition of "completed operations hazard" is far from clear.

6. Although completed operations and products liability are related—each addresses claims that arise away from the insured's premises and after

bodily injury and property damage *arising out of operations or reliance upon a representation or warranty made at any time with respect thereto,* but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the Named Insured.

Policy Definitions Page (attached to this Order as Appendix A) (emphasis added).[5] Newton and The Insurance House correctly note that Newton's delivery and related activities were an operation as contemplated in the definition above. The problem, however, is that the Claytons' claims arise from alleged defects in the corn delivered, not from some act or omission of Newton during delivery.

 This distinction warrants excluding the Claytons' claims from coverage under completed operations because of the Policy's separate treatment of completed operations and products liability. Insurance policies must be construed as a whole, and all provisions must be harmonized. *Dixon,* 168 Ga. App. at 322, 309 S.E.2d at 150 (1983). Also, policies divide risks into categories to allow identification of specific risks and the tailoring of a policy's coverage to the individual insured's needs. Allan E. Korpela, Annotation, *Construction and Application of Clause Excluding from Coverage of Liability Policy "Completed Operations Hazards,"* 58 A.L.R.3d 12, 20 (1974). With these two points in mind, it follows that claims falling squarely within products liability coverage should also be included in completed operations coverage only if they bear some relationship to the risks towards which completed operations coverage is aimed.[6] Here,

the insured's hand is laid to rest, *Hines v. Prudential Ins. Co.,* 357 F.2d 726, 731 (6th Cir.1966)—they are aimed at different risks, *Colony Insurance Co. v. H.R.K. Inc.,* 728 S.W.2d 848, 851 (Tx.Ct.App.1987) (also explaining that completed operations generally do not include injuries that arise from the sale or distribution of a product). Completed Operations coverage is designed primarily for service or maintenance businesses and typically is inapplicable to claims arising from the sale or distribution of products. *Id.* In contrast, Products Liability typically encompasses defects in the insured's products. *Id.*

they do not—the Claytons' claims arise from problems with the product (that is, the corn) and are only incidentally related to the delivery "operation." Consequently, they are not included within the Policy's completed operations coverage.

■ Because coverage is not provided under completed operations, the next question is whether the Policy includes products liability coverage. Ambiguity concerning the Policy's terms and the parties' intent, however, requires that this question be resolved by a jury. As noted above, although the interpretation of insurance policies generally is a matter for the court, a jury question arises when ambiguity remains after application of the appropriate rules of contract construction. *See Blakey*, 255 Ga. at 700, 342 S.E.2d at 309. The ambiguity presented here concerns the Policy's use of the inclusive phrase "Completed Operations and products liability Insurance" as a single category of coverage and its simultaneous use of language that suggests only completed operations coverage is provided.

The Policy's declarations page lists the named insured's business as "Hay, Grain, Feed Dealer."[7] The declarations page also states that "[t]his policy provides coverage only where a charge is shown in the premium column" and includes five categories of coverage. Those five categories are labeled: (1) "Completed Operations and Products Liability Insurance," (2) "Manufacturers' and Contractors' Liability Insurance," (3) "Owners', Landlords' and Tenants' Liability Insurance," (4) "Personal Injury Liability Insurance," and (5) "Additional Insured Endorsement." The columns adjacent to "Completed Operations and Products Liability Insurance" list one premium figure of $6,488.00 and refer to form L6391. Significantly, the declarations page includes nothing to allay the implication that coverage is provided for both completed operations and products liability.

Form L6391 is labeled "Completed Operations and Products Liability Insurance" and states that "[t]he insurance afforded is only

with respect to such of the following Coverages as are indicated by specific premium charge or charges."[8] The completed operations column of form L6391 lists premiums totaling $6,488.00, but, instead of listing a premium amount, the products column includes only the typed phrase "NOT COVERED." Comparing the declarations page and form L6391, therefore, it appears the two are in direct conflict.

Although admitting the Policy's declarations section "seem[s] to indicate that [Newton purchased] products liability insurance ...," Essex contends that the phrase "NOT COVERED" typed on form L6391 dispels any confusion. Taken in isolation, Essex's interpretation is an appealing reconciliation of the declarations page and form L6391. However, the declarations page's unqualified listing of a premium for completed operations *and* products liability and form L6391's purported exclusion of products coverage are in direct conflict; consequently, they are sufficiently incompatible to warrant consideration of extrinsic evidence. *See Wood v. Phoenix Ins. Co.*, 199 Ga. 461, 468, 34 S.E.2d 688, 692 (1945) (the rule barring admission of parol evidence to change the terms of a written contract does not bar the use of parol evidence to explain latent or patent ambiguities); *Taylor Freezer Sales Co. v. Hydrick*, 138 Ga.App. 738, 227 S.E.2d 494, 496 (1976) (when a contract is ambiguous, parol evidence may be considered to ascertain the parties' intent).

■ When the surrounding circumstances are considered, the meaning of the form L6391 phrase "NOT COVERED" is sufficiently ambiguous that the parties' intent must be determined by a jury. In support of their claim that the Policy includes product coverage, Newton and The Insurance House offer an alternative interpretation of form L6391—they maintain the words "NOT COVERED" were typed in the products column simply to avoid "stacking," or "pyramiding," of policy limits for completed operations and

---

7. *See* Policy Declarations (attached to this Order as Appendix B). [*Editor's Note:* Appendix B omitted from publication.]

8. *See* Policy Form L6391 (attached to this Order as Appendix C). [*Editor's Note:* Appendix C omitted from publication.]

products liability.[9] More significantly, however, they note several points that detract from Essex's interpretation of the Policy. First, they explain that both the application for insurance originally filled-out by Newton and the policy renewal forms listed completed operations and products liability together—the forms did not provide for the separate election of either. Also, the first Policy Essex issued to Newton did *not* contain the words "NOT COVERED" on form L6391; those words appear on the two renewal policies only.

To this, Newton and The Insurance House add deposition testimony that at least implies Newton, R.L. Toole (Newton's local insurance agent), and The Insurance House fully intended that the Policy include products liability coverage. Finally, Newton and The Insurance House also explain that the tables The Insurance House used in quoting rates to Newton and in calculating the Policy's $6,488.00 completed operations premium did not treat completed operations and products liability separately. In other words, the table listed only one term, "completed operations and products liability," and one premium calculation figure for that category of coverage. Because of this conflicting evidence, the question of whether the Policy covers products liability hazards must be submitted to a jury.[10]

## IV. CONCLUSION

That portion of the Report and Recommendation that denies Newton's Motion for Separate Trial hereby is **ADOPTED** as the Order of this Court. Furthermore, that portion of the Report and Recommendation that recommends finding as a matter of law that Essex has no duty to indemnify for or defend against punitive damages claims hereby is **ADOPTED** as the Order of this Court. The Court **DECLINES TO ADOPT** the Report and Recommendation's remaining conclusions.

Essex's Motion for Summary Judgment is **GRANTED** as to Essex's duty to indemnify for or defend against punitive damages claims and **DENIED** as to all other claims. The Cross–Motions for Summary Judgment of Newton and The Insurance House hereby are **DENIED.**

With the entry of this Order, the issues remaining for resolution at trial include:

1. whether Newton is liable for the Claytons' injuries (including whether Newton has been "stubbornly litigious");

2. whether Newton is entitled to collect on its accounts receivable from the Claytons;

3. whether the Policy includes the products liability hazard so as to cover the Claytons' claims;

4. whether Newton provided Essex sufficient notice of the "occurrence;"

5. if the Policy does cover the Claytons' claims—

 a. whether and to what extent the Claytons' injuries are covered by the Policy, and

 b. whether Essex violated Ga.Code Ann. § 33–4–6; and

6. if the Policy does not cover the Claytons' claims—

 a. whether Essex or The Insurance House fraudulently or negligently misrepresented that the Policy covered claims such as those the Claytons assert, and

 b. whether Essex or The Insurance House breached a contract to provide insurance for claims such as those the Claytons assert.

---

9. Stacking, or pyramiding, describes the recovery of an amount equal to several times the policy limit by making claims under multiple policy provisions for the same or related occurrences.

10. As an aside, even if the Policy is found to include product liability hazard coverage, a further inquiry must be made into whether the *type* damages claimed (e.g., loss of use damages) are covered as well.