Robert C. McBRIDE, Plaintiff,

v.

LIFE INSURANCE COMPANY OF VIRGINIA d/b/a GE Life and Annuity Assurance Company, Defendant.

No. 4:00–CV–217–3(WDO).

United States District Court, M.D. Georgia, Columbus Division.

Feb. 27, 2002.

Stanley L. Merritt, Jr., Jason Lance Crawford, Gary O. Bruce, Columbus, GA, Kice H. Stone, Macon, GA, Jonathan H. Waller, Birmingham, AL, for plaintiff.

Robert C. Norman, Jr., Howard Jerome Strickland, Macon, GA, Charles C. Platt, Randall M. Fox, Patrick J. Gennardo, Le-Boeuf, Lamb, Green & MacRae, LLP, New York City, John W. Woods, Jr., Washington, DC, for defendant.

### ORDER

OWENS, District Judge.

This matter is before the Court on the following motions:

1. Defendant's Motion to Dismiss [Tab 10];

2. Defendant's Motion to Strike the affidavits of Robert McBride, Earl Mann and Alton R. Barnes, Jr. [Tab 23];

3. Plaintiff's Motion For Leave to Amend Complaint [Tab 33];

4. Defendant's Motion for Summary Judgment [Tab 38];

5. Defendants various Motions to Strike filed in the sealed material; and

6. The Parties' joint stipulation regarding the affidavit of Alton Barnes, Jr. [Tab 55].

Pursuant to the July 21, 2001 Order that converted the Motion to Dismiss into a Motion for Summary Judgment, the motion will now be analyzed under Rule 56 of the Federal Rules of Civil Procedure and applicable case law.

## I. Factual and Procedural History

Plaintiff Robert C. McBride brings his Complaint on behalf of himself and the putative class of individuals nationwide who purchased life insurance policies from Defendant Life of Virginia beginning in the mid 1980's. On or about April 24, 1986, Defendant issued Plaintiff McBride a "Flexible Premium Adjustable Life" insurance policy[1] with $100,000 in coverage. Plaintiff contends he was induced into buying this policy by being promised the premiums were fixed at $151.42 per month. This alleged promise came from the selling agent Earl Mann. At the time, Mr. Mann worked for National Security Insurance and not for Defendant Life of Virginia. *See* Pl's. Resp. to Mot. to Dismiss, Tab 17, Ex. B. The policy was brokered by another insurance company out of Columbus, Georgia. *Id.* During the time in question, this type of policy was a new product represented as better than existing whole life policies. *Id.* It appears and the parties do not dispute that Plaintiff has continued to make payments and the Defendant to provide coverage under this policy.

Around March 1998, Defendant began assessing a premium substantially higher than the one originally represented, around $250, and the premiums have continued to increase. On November 1, 2000, Plaintiff filed the Complaint in this case alleging (1) fraud and misrepresentation, (2) suppression and concealment, (3) violation of Georgia's RICO statute, (4) breach of contract and (5) unjust enrichment. Defendant removed the case to this Court on December 1, 2000. After an unsuccess-

---

1. This policy is found in whole and in part in various parts of the record. The most complete copy appears to be that attached to Tab 41 as Exhibits 6, 7, 9 and 11. Attached to the Affidavit of William Daner, V.P. and Associate General Counsel for Defendant, is a Buyer's Manual of the type purportedly given out "at the time Robert C. McBride acknowledged receiving" his policy. Plaintiff has included a copy as an attachment, Exhibit 1, to the "Collective Notice of Filing Evidentiary Materials" in opposition to Defendant's motion for summary judgment.

ful motion to remand, the case remained in this Court.

Plaintiff contends the Policy Data Sheet, the Policy itself and the Application are purposely misleading and confusing. The agent, Earl Mann, informed the Plaintiff that the Life of Virginia policy was better than the policy[2] it replaced. Mann also allegedly represented that he understood the Life of Virginia policy to remain in force as long as the monthly $151 premium was paid. *See* Aff. of Earl Mann, Ex. B to Tab 17. The parties disagree over whether Plaintiff ever received the "Buyer's Manual" that more specifically explains the terms and conditions of the policy. Further, Plaintiff contends he never received any annual financial statements prior to 1998. These financial statements set out the then-current status of the policy including the cash value, the premiums expected, etc.

The administration of the policy is best explained by Defendant's designated corporate representative, Bruce Booker. Booker is the Vice President for Business Development. *See* Depo. of Booker at 11:19–20. Part of Booker's responsibilities include product design, actuarial projections and pricing projections. *Id.* at 13–16. In his deposition,[3] Booker explained how the company priced the policies. He explained the company made projections on how interest rates were going to effect the cost of the policies and thus the cash value of the policies. *Id.* at 38–59. The cash value is almost entirely dependent on interest rates remaining stable for 20 to 30 years. McBride's policy was to remain in force until 2028—42 years. However, Mr. Booker testified that "I don't believe there is ever any reason or requirement to assume that either current interest rates or credited interest rates would remain at any particular level for 30 years." *Id.* at 81:17–20. In fact, Booker stated, "I believe that the actuarial principles would—would require that the actuary not make assumptions that depend on the interest rate being unchanging over a long period of time." *Id.* at 98:6–9. Booker admitted that even in the unlikely event the interest rate remained at or around the 1986 rate—9.71%—McBride's policy would still lapse in year 13 [1999] if he continued to pay only the agreed upon premium of $151. *Id.* at 100:4–21. In fact, Booker clarified the "initial planned premium, periodic premium, would not be sufficient to have the policy last until ... 2028." *Id.* at 100:22–24. Accordingly, "the monthly premium would have to increase to maintain the policy in force." *Id.* at 101:8–11. Notably, from a review of the record, this explanation is found nowhere in the policy or any accompanying material provided to McBride at the time he purchased his policy.

Based on these facts, Plaintiff contends the allegedly confusing and misleading nature of how his policy was administered and valued supports his claims against Defendant. Defendant contends the policy contains no misrepresentations or ambiguities. Thus, it is entitled to judgment as a matter of law. Defendant also contends the applicable statutes of limitation bar this suit.

## II. Motions to Strike

Defendant Life of Virginia moved to strike the affidavits of Plaintiff Robert McBride, Earl Mann and Alton R. Barnes. *See* Tab 24 *et seq.* Defendant contends they were improper when filed because the case was then before the Court on Defendant's Motion to Dismiss. Because the Court converted the motion to one for summary judgment, ordered the parties to

---

2. The former policy was with Accacia, an entirely different company.

3. Attached as Exhibit 6 to the Collective Notice of Filing Evidentiary Material.

conduct discovery and then file additional briefs, those affidavits are admissible as having potential relevancy to the matters before the Court. Therefore, the **Motions to Strike the affidavits of McBride and Mann are DENIED.**

Defendant also contests the admissibility of Alton Barnes's purported expert testimony. Defendant contends his affidavit does not meet the requirements in Federal Rule of Civil Procedure 702 or relevant case law for expert testimony. On January 18, 2002, the parties filed a stipulation regarding the Barnes Affidavit. *See* Tab 55. The parties stipulated that McBride does not rely upon the Affidavit in opposition to Defendant's Motion for Summary Judgment. The parties reserved Plaintiff's right to use the Affidavit for purposes unrelated to the pending summary judgment motion and Defendant's right to object thereto if Plaintiff relies on the same for other purposes. Therefore, this portion of the **Motion to Strike is MOOT** and the Court will not consider the Affidavit of Al Barnes at this time.

Defendant has also moved to strike a document filed by McBride and the counterclaim Plaintiff's in the other four related cases. This document is entitled "Plaintiff McBride and Counterclaim Plaintiff's Statement" and is included in the sealed material. Defendant contends the Statement is neither contemplated nor required by Rule 56. Plaintiff contends that they filed the Statement only in an abundance of caution to ensure full compliance with Rule 56. Plaintiff has stipulated to withdrawing any portion of the Statement not in compliance with the Rules. Further, Plaintiff indicated it did not antic-ipate any response from Defendant to the Statement. The parties have had ample opportunity to address the issues contained therein during the January 16, 2002 hearing and in the numerous briefs that have been filed. Because all the information contained in the Statement has already been addressed in some form, there is no harm or prejudice in filing the same. More important, the Court has addressed the five related cases collectively for the past year. Therefore, it was not inappropriate for McBride and the counterclaim Plaintiff's to file a joint statement of material facts. Accordingly, the **Motion to Strike the "Plaintiff McBride and Counterclaim Plaintiff's Statement" is hereby DENIED.**

Defendant has moved to strike the Affidavit and Report of Purported Expert Tim C. Ryles. This Affidavit is found in the sealed material [4]. Defendant contends the purported expert opinions do not satisfy the standards set in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). This Court adopts the reasoning of another judge of this court that after a full hearing on the matter addressed the admissibility of this same expert's opinion. *See Tidwell v. Allstate Ins. Co.*, No. 1:96–CV–189–1 (M.D.Ga. Apr. 4, 2000)[5]. In *Tidwell*, the Court held, "Dr. Ryles has an extensive basis upon which to base his testimony and hence Ryles' testimony regarding the standard of care in the industry ... has 'a reliable basis in the knowledge and experience of the relevant discipline.'" *Id.* at *4(citing *Kumho Tire*, 526 U.S. 137,

---

**4.** Attached as Exhibits 11 and 12 to the "Collective Notice of Filing Evidentiary Materials and Submission of Exhibits In Opposition to Life of Virginia's Motions for Summary Judgment." Tim Ryles also provided a report as Exhibit A to Tab 35, Plaintiff's Disclosure of Expert Testimony.

**5.** Attached as Exhibit A to Plaintiff's Opposition to Defendant's Motion to Strike, Tab 60. The hearing transcript is attached as Exhibit A to Defendant's Reply Brief at Tab 61.

149, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)). As recognized in *Tidwell*, Ryles' opinion is "based more on his knowledge and experience rather than on scientific matters which were the subject of *Daubert*." *Id.* The Ryles opinions are not admitted to decide the ultimate, dispositive issues in this case—the actual legal interpretation of the contracts. Rather, his expert opinion will be used to explain the complex nature of the contracts and the terms and concepts contained therein. Because that information is relevant to the issues before the Court, appears to be in compliance with Federal Rule of Civil Procedure 702 and Defendant has been able to respond to the Affidavit, it will not be struck from the record. Accordingly, the **Motions to Strike the Opinions of Tim Ryles are DENIED.**

### III. Motion to Amend Complaint and Brief

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a pleading should be "freely given when justice so requires." *See also Laurie v. Ala. Court of Crim. Appeals,* 256 F.3d 1266, 1274 (11th Cir.2001) (citation omitted). "There must be a substantial reason to deny a motion to amend." *Laurie,* 256 F.3d at 1274. "Substantial reasons justifying a denial include 'undue delay, bad faith, dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of amendment.'" *Id.* (citation omitted).

Plaintiff seeks to amend his Complaint and asserts the following: (1) his wife should be added as a party Plaintiff because she is the beneficiary of the life insurance policy in question and (2) Plaintiff requests to add an additional cause of action on behalf of the putative class for suppression and concealment. *See* Tab 33. Plaintiff bases his motion on the scheduling Order entered on September 28, 2001

that provided for the addition of parties or amended pleadings. Pursuant to that Order, the parties agreed to divide discovery into two stages. The first would be for claims asserted in Defendant's Motion for Summary Judgment. The second phase would be for class certification after any denial of Defendant's motion.

Plaintiff's Wife, Barbara McBride may be added as a Plaintiff to this case. There is precedent for finding a beneficiary of a life insurance policy has standing to maintain suit. *See Butero v. Royal Maccabees Life Ins. Co.,* 174 F.3d 1207 (11th Cir. 1999)(in ERISA context widow as beneficiary under life insurance policy had standing to sue for fraud); *Hancock v. New York Life Ins. Co.,* 899 F.2d 1131 (11th Cir.1990)(child of named insured had standing to sue as third-party beneficiary of a hospital expense policy). Therefore, that portion of Plaintiff's **Motion is GRANTED and Barbara McBride is added as a Plaintiff** in this case.

Pursuant to the Scheduling Order, Defendant was put on notice that additional claims and/or parties would be added. Further, as related claims have already been asserted on behalf of the putative class, the claim sought to be added now are not so prejudicial that Defendant cannot fairly be expected to answer the same. Because there will be no prejudice to Defendant regarding the claims asserted on behalf of the putative class, Plaintiff may also add the claims of suppression and concealment. Accordingly, that portion of the **Motion is GRANTED** as well.

### IV. Summary Judgment Standard

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is enti-

tled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "Moreover, the moving party has the burden of meeting this exacting standard." *Brooks v. Blue Cross & Blue Shield,* 116 F.3d 1364, 1369 (11th Cir.1997) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). Applying this standard, the Eleventh Circuit has explained:

> In assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. All reasonable doubts about the facts should be resolved in favor of the non-movant. If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment. Moreover, the party opposing a motion for summary judgment need not respond to it with any affidavits or other evidence unless and until the movant has properly supported the motion with sufficient evidence. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever.

*Id.* (internal citations omitted). In this case, summary judgment is not appropriate if the parties agree on the basic facts—that there was a life insurance policy issued to Plaintiff by Defendant in 1986—but disagree about the inferences that should be drawn from these facts—whether the contract is fraudulently vague, ambiguous or misleading.

## V. Statutes of Limitation

### A. Fraud Claims

■ The statute of limitations for fraud claims in Georgia is four years. O.C.G.A. § 9-3-31. Actual fraud tolls the statute of limitations where it is the gravamen of the action before the court. *Shipman v. Horizon Corp.,* 245 Ga. 808, 267 S.E.2d 244, 246 (1980). "Where the basis of an action is actual fraud, the mere silence of the party committing it is treated as a continuation of the original fraud and as constituting a fraudulent concealment, and the statute of limitations does not begin to run against such right of action until such fraud is discovered, or could have been discovered by the exercise of ordinary care and diligence." *Id.* at 246. *See also Coffee v. General Motors Acceptance Corp.,* 30 F.Supp.2d 1376, 1381 (S.D.Ga.1998)(citing *Shipman*)(actual fraud where defendant intentionally deceives by false representation or by concealment of a fact which has the effect of debarring and deterring plaintiff from his action).

■ Plaintiff contends there was actual fraud in the procurement of the life insurance policies in question. The statute of limitations would not have begun to run in this case until Plaintiff discovered the premiums had actually been raised in contradiction to the terms to which he agreed and paid for. Alternatively, the limitations period began to run when Plaintiff could have reasonably discovered the alleged fraud. For reasons more specifically addressed in the sections below, Plaintiff could not have discovered the alleged fraud in this case until March of 1998 when he began receiving documentation of the drastically increased premiums. The statute of limitations did not run until March of 2002. Since the Complaint was filed on November 1, 2000, it was filed within the limitations period.

## B. Breach of Contract Claims

"The public policy of this state as expressed by the legislature is that actions on contracts shall be brought within six years." *General Electric Credit Corp. v. Home Indem. Co.*, 168 Ga.App. 344, 309 S.E.2d 152, 156 (1983) (citing O.C.G.A. § 9–3–24)(other citations omitted). "Thus a party has six years within which to bring suit on an insurance policy." *Id.* It appears the contract in this case may not have been breached until March of 1998. The statute of limitations would not have run until March of 2004. The issues of whether there was a valid contract, whether it was breached and, if so, when it was breached are more thoroughly discussed below.

## C. Unjust Enrichment Claims

The statute of limitations for unjust enrichment claims in Georgia is four years. *See Burns v. Dees*, 252 Ga.App. 598, 557 S.E.2d 32 (2001)(citing O.C.G.A. § 9–3–26). For the reasons stated below, there are questions of fact regarding whether Defendant was unjustly enriched pursuant to the insurance policy in question. Therefore, it is not possible at this stage to determine whether or when the statute of limitations began to run.

## D. Georgia RICO Claims

The statute of limitations for bringing Georgia RICO claims is five years. O.C.G.A. § 16–14–8. The Georgia Code provides that "a criminal or civil action or proceeding under this chapter may be commenced up until five years after the conduct in violation of a provision of this chapter terminates or the cause of action accrues." *Id.* Because it is not possible to make this determination at this stage, this too must be submitted to a jury.

## VI. Substantive Claims

### A. Breach of Contract Claim

 "A contract is an agreement between two or more parties for the doing or not doing of some specified thing." *Budget Rent–A–Car v. Webb*, 220 Ga.App. 278, 469 S.E.2d 712, 713 (1996)(citing O.C.G.A. § 13–1–1). "An action at law lies for breach of a contract and ... damages are given as compensation for the injuries sustained. The elements of a right to recover for a breach of contract are the breach and the resultant damages to the party who has the right to complain about the contract being broken." *Id.* (citing *Graham Bros. Constr. Co. v. C.W. Matthews Contracting Co.*, 159 Ga.App. 546, 284 S.E.2d 282 (1981)). "Parol evidence is inadmissible to add to, take from, or vary a written contract" but "if there is an ambiguity, latent or patent, it may be explained." O.C.G.A. § 13–2–2(1)(2001). "If the construction is doubtful, that which goes most strongly against the party executing the instrument or undertaking the obligation is generally to be preferred." *Id.* at (5). Specifically, an insurance contract is to be construed against the insurance company who drafted the document and instead in favor of the insured. *Lee v. Fidelity & Cas. Co.*, 567 F.2d 1340 (5th Cir.1978). When a plaintiff alleges misrepresentations go to the inducement of the contract itself rather than promises to perform under the contract, parol evidence is admissible to show the contract was procured by fraud. *Smith v. Jones*, 154 Ga.App. 629, 269 S.E.2d 471 (1980).

 "Under Georgia law, insurance policies are written contracts, so they are subject to the rules of construction for contracts." *Essex Ins. Co. v. Newton Agri–Systems, Inc.*, 832 F.Supp. 1565, 1569 (S.D.Ga.1993) (citations omitted). "When deciding whether the terms of a contract, or an insurance policy, are am-

biguous, the reviewing court must apply a [three-step] analysis: (1) the court must decide whether the contract's language is ambiguous; (2) if it is, the court must then apply the applicable rules of construction; (3) and, if the ambiguity remains, the question must be submitted to a jury." *Id.* (citations omitted). "An ambiguity is present in an insurance policy when its language 'is so confusing that an average policyholder cannot make out the boundaries of coverage....'" *Id.* (citations omitted). The statutory rules of contract construction are specifically set out in O.C.G.A. § 13–2–2. Applicable to this case are the rules on parol evidence, using the common meaning of words and phrases and construing the contract in favor of the insured.

■ The statutory rules of construction provided little or no help in discerning the rights and obligations of the parties in this case. The use of parol evidence only further clouded the meaning of the terms in the contracts because the parties' stated intentions vary greatly. The common meaning of the words and phrases imply the premiums would be $151 throughout the life of the policy. This finding is also supported by the principle of construing the contract in favor of the insured and against the Defendant who drafted the document. After applying these rules, there remain material issues of fact in dispute regarding (1) whether there was a valid contract at all based on the allegations of its misleading and ambiguous nature and (2)whether there was breach and/or resulting damages. Pursuant to the applicable statutes and interpretive case law, those issues must be submitted to a jury. Accordingly, the **Summary Judgment** motion is **denied** as to the **breach of contract claims.**

## B. Fraud and Concealment Claim

### 1. Prima Facie Case of Fraud

■ To state a claim for fraudulent misrepresentation under Georgia law a plaintiff must prove five essential elements: (1) that the defendant made representations; (2) that defendant knew the representations were false; (3) that these representations were made intentionally and for the purpose of deceiving the plaintiff; (4) that plaintiff reasonably relied on these representations; and (5) that as a proximate result of the misrepresentations plaintiff incurred damages. *See* O.C.G.A. § 23–2–52; *Williams v. Dresser Indus., Inc.,* 120 F.3d 1163, 1167 (11th Cir.1997). "Georgia law further provides that 'suppression of a material fact which a party is under an obligation to communicate constitutes fraud.'" *Id.* (citations omitted).

■ "The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." *Id.* "An obligation to disclose must exist before a party may be held liable for fraud based upon the concealment of material facts." *Id.* "In cases where Georgia courts have found the existence of a confidential relationship in business, the parties have had either a history of business dealings with each other or the kind of relationship that is not arms-length, such as a partnership or principal and agent." *Id.* at 1168. "However, Georgia courts have recognized that even though the parties were acquainted as friends or business associates prior to a business transaction, a confidential relationship is not automatically established." *Id.* The "existence of a confidential relationship depends upon the circumstances and therefore is generally a jury issue." *Id.* "Where one person sustains towards another a relation of trust and confidence, his silence when he should speak or his failure to disclose what he ought to dis-

close constitutes fraud in law just as do actual affirmative false representations." *Tigner v. Shearson–Lehman Hutton, Inc.,* 201 Ga.App. 713, 411 S.E.2d 800, 802 (1991) (citations omitted). O.C.G.A. § 23–2–58 defines a confidential relationship as one "where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another." In *Tigner,* the court held a confidential relationship was present where a broker undertook an obligation to manage the plaintiff's financial investments. In *Stewart v. Boykin,* the Georgia Court of Appeals held that where an insurance agent was not the employee of the insurance company, the existence of a fiduciary relationship between the agent and the insured was a question for the jury. *Stewart v. Boykin,* 165 Ga.App. 868, 303 S.E.2d 50 (1983). *See also Dominick,* 809 F.2d at 1570–71 (duty of fair dealing and to disclose material facts where insured in inferior bargaining position to agent). Based on this guidance, the issue of whether there was a duty to disclose the true nature of the policy to Plaintiff McBride is more appropriately a question for the jury.

## 2. Affirmance v. Rescission

■ When a party seeks to prove he was fraudulently induced by misrepresentations into entering a contract, "he can affirm the contract and sue for breach or seek to rescind and sue in tort for fraud and deceit." *Carpenter v. Curtis,* 196 Ga. App. 234, 395 S.E.2d 653, 655 (1990) (citations omitted). "Affirmance of the contract by the defrauded party does not necessarily deprive him of the right to sue for damages for fraud, as the right to affirm and the right to fraud damages coexist. However, he must do nothing to waive the fraud." *Id.* Waiver may be accomplished by actually affirming the contract, by waiting too long to bring an action on the contract and thus constructively affirming the contract or in some instances by a

merger clause that is not itself voidable because of fraud. *See generally Id.* A merger clause can be defeated under certain circumstances such where there is evidence that the transaction in question was not an arm's length transaction between professionals or there was a duty to disclose between the parties. *Kobatake v. E.I. DuPont De Nemours and Co. et al.,* 162 F.3d 619, 626 (11th Cir.1998) (citation omitted). If rescission of the contract is no longer a viable option, a plaintiff must proceed under the contract and seek any damages to which he is entitled. *Carpenter,* 395 S.E.2d at 656.

■ One case specifically addressing insurance policies stated "courts should be concerned with assuring that the insurance purchasing public's reasonable expectations are fulfilled." *Benevento v. Life USA Holding, Inc.,* 61 F.Supp.2d 407, 418 (E.D.Pa.1999)(annuity case where insureds claimed fraud in the sale). "Regardless of the ambiguity (or lack thereof) inherent in a given set of insurance documents (whether they be applications, conditional receipts, rider, policies, etc.), the public has a right to expect that they will receive something of comparable value in return for the premium paid." *Id.* (citations omitted). "Thus, where an individual applies and pays for specific insurance coverage, the insurer may not unilaterally change the coverage or issue a policy differing from what the insured requested and paid for without affirmatively showing that the insured was notified or, and understood the change, regardless of whether the insured read the policy." *Id.* (citation omitted). *See also Greenberg v. Life Insurance Company of Virginia,* 177 F.3d 507 (6th Cir.1999)(interpreting a similar contract pursuant to similar Ohio law and finding the contract sufficiently ambiguous, vague and misleading to reverse trial court's dismissal for failure to state a claim).

The most pertinent statement of Georgia law is that: "Concealment of material facts may amount to fraud when direct inquiry is made, and the truth evaded, or where the concealment is of intrinsic qualities of the articles which the other party by the exercise of ordinary prudence and caution could not discover." *Rivers v. BMW of North America, Inc.,* 214 Ga.App. 880, 449 S.E.2d 337 (1994).[6] This statement of the law is taken from a jury instruction in fraud cases involving vehicles sold to consumers who were misled into purchasing a product that was not as represented by the seller. This concept is also applicable where insureds have been fraudulently induced into parting with thousands of dollars to purchase a life insurance policy that was materially different than represented by the company. Based on these principles of law, Plaintiff is not estopped from asserting both fraud and breach of contract claims at this point.

### 3. Parol Evidence Rule and Related Issues

■■■■ In support of Plaintiff's claim that he was fraudulently induced into signing and maintaining the policy in question, he filed various documents, affidavits and briefs containing information Defendant contends violates the Parol Evidence Rule. As a matter of general contract construction, a contract containing a "merger" clause indicates a complete agreement between the parties that may not be contradicted by extraneous material. However, in the case of fraud, extraneous material may sometimes be admitted. "False and fraudulent representations as to an existing fact which induced the signing of a sales contract give the purchaser the right to rescind the contract." *Crews v. Cisco Bros. Ford–Mercury, Inc.,* 201 Ga.App. 589, 411 S.E.2d 518, 519 (1991) (citations omitted)(concerned buyers of used vehicles sued dealer for fraud after learning the vehicles had been previously wrecked). "One who seeks rescission of a contract for fraud must restore or offer to restore the consideration received thereunder, as a condition precedent to bringing the action." *Id.* (citation omitted). "[H]owever, restoration by the purchaser is not an absolute rule, and does not require that the defrauding part be placed in exact status quo, but only that he be placed substantially in his original position and that the party rescinding derives no unconscionable advantage from the rescission." *Id.* (citations omitted). The defrauded party need not offer to restore where the defrauding party has made restoration impossible or when to do so would be unreasonable. *Id.* (citations omitted). This rule can only be applied when it is equitable. *Id.* at 520. It "was not meant to give the defrauding party an advantage at the expense of the defrauded purchaser." *Id.*

■■■ With this general guidance in mind, the analysis can proceed to the underlying issues. As to the merger clause, "questions of reliance on the alleged fraudulent misrepresentation in tort cases cannot be determined by the provisions of the contract sought to be rescinded but must be determined as a question of fact for the jury." *Id.* (citing *City Dodge v. Gardner,* 232 Ga. 766, 208 S.E.2d 794 (1974)). "It is inconsistent to apply a disclaimer provision of a contract in a tort action brought to determine whether the entire contract is invalid because of alleged prior fraud

---

**6.** The Court notes that *Life Ins. Co. of Virginia v. Conley* relied upon by Defendants does not appear to be the current state of the law in Georgia regarding fraudulent inducement to purchase a life insurance contract. *Life Ins. Co. of Virginia v. Conley,* 181 Ga.App. 152,

351 S.E.2d 498 (1986). Although *Conley* interpreted a similar contract by the same Defendant, subsequent case law indicates a different approach than the one taken in *Conley* that would result in a complete miscarriage of justice to the insured.

which induced the execution of the contract." *Id.* "If the contract is invalid because of the antecedent fraud, then the disclaimer provision therein is ineffectual since, in legal contemplation, there is no contract between the parties." *Id.* at 520–21 (citation omitted). "Parol evidence showing fraud in the inducement is admissible even though the written contract says the entire agreement of the parties is contained therein." *del Mazo v. Sanchez,* 186 Ga.App. 120, 366 S.E.2d 333, 337 (1988). Evidence of fraudulent inducement is sufficient to raise an issue thereby precluding summary judgment on the issue of fraud. *Id.* "Questions of fraud, the truth and materiality of representations made by a seller, and whether the buyer could have protected himself by the exercise of proper diligence are, except in plain and indisputable cases, questions for the jury." *Id.* (citations omitted).

Plaintiff asserts claims for fraud and concealment based on an insurance policy. He contends his policy omitted material information the lack of which was the direct and proximate cause of his damages. Plaintiff contends there were misrepresentations regarding the duration of coverage, the type of coverage, the duration and type of premiums and other important information vital to a complete understanding of the policy.

Plaintiff McBride's policy provided for an interest rate of 9.71%. The maturity date of the policy was stated as 2028 or 43 years after the inception date. Although it is extremely vague, ambiguous and misleading, the pertinent terms in the policy and Buyer's Manual provide that the $151 premium would remain the same as long as the cash value did not diminish. The cash value would apparently diminish if interest rates dropped. It is preposterous to assume that interest rates would remain constant or anywhere near the same ballpark for four decades. However, this is not made clear anywhere in the policy. The agent, Mr. Mann, could not even understand this policy. It is absurd to expect the Plaintiff to have understood the ramifications of the financial market on his insurance policy. In fact, in his Affidavit, Plaintiff McBride asserts he still does not understand how the market and resulting interest rates effect life insurance in general. Indeed, the policy language contains no clear language indicating Defendant's right to increase the initial, agreed-upon premium. Further, the policy does not contain any sort of clear explanation of the circumstances under which the premiums would increase or decrease, of what the true meaning of cash value is in relation to the continuation of the policy or of how Plaintiff could avoid the lapse of his policy. There are places where terms of art are defined or where a number is stated such as the then-current interest rate or *illustrative* interest rates. These terms or phrases are not explained though in relation to how these concepts affect the policy. The Policy Data Sheet provides that the "scheduled premium" was $151.42 and it was due monthly. Although the policy is named "Flexible Premium Adjustable Life Insurance" policy, nowhere is "flexible" explained. The only place "flexible" is mentioned is where it is noted the *insured* can change the *frequency* or the *amount* of the premiums. In another section, the policy states it is *possible* coverage will expire "where either no premiums are paid following payment of the insured premium or subsequent premiums are insufficient to continue coverage to such date." This could easily be construed to mean that coverage will only lapse if the $151.42 monthly payment is not made since this language is located after the listed "scheduled" premium.

In another section of the policy titled "Continuation of Coverage," it provides if the premiums are not made "as planned"

the coverage will lapse unless "cash value less policy debt covers the monthly deduction." Again, this concept is *not* explained. This vague, confusing statement is all that purports to explain when and/or how coverage could lapse. Over all, the policy is profoundly vague. Under the summary judgment standards this Court must apply, Plaintiff has far exceeded his burden to establish material issues of fact in dispute precluding judgment for the Defendant.

Contrary to Defendant's argument, waiver or estoppel do not apply to bar Plaintiff's claims. It is clear Plaintiff did not ratify or affirm the contract in question *with knowledge of the fraud* thereby showing his intention to abide by the contract. *Touche, Inc. v. Dearborn*, 161 Ga. App. 188, 291 S.E.2d 35, 38 (1982). Further, he did not waive the cause of action for fraud. The "question as to whether the defrauded party has waived the fraud is one mainly of intent." *Id.* The issue of intent is a question more appropriately submitted to a jury and not adjudicated on summary judgment.

Likewise, Defendant's argument that Plaintiff should seek to rescind the policy and return any benefit obtained therefrom is equally without merit. First, Plaintiff has not realized any benefit from this policy as he is still alive nor has his beneficiary, Barbara McBride, realized any tangible, monetary benefit. Second, it would be extremely inequitable and unreasonable at this point to require the McBrides to rescind the policy and buy a new policy. More than 15 years have passed since Robert McBride purchased his policy. In that time, he has aged and his health has deteriorated considerably. As a result, he is virtually uninsurable for coverage such as that he sought through Defendant. For these reasons, **Summary Judgment is denied** as to the Fraud and Concealment claims.

## C. Georgia RICO Claims

Because the question of whether Defendant committed fraud in this case must be submitted to a jury, there is no basis upon which to decide the RICO claims. RICO claims cannot be adjudicated without a finding of fraud that could serve as a predicate act under Georgia RICO laws. *See Prince Heaton Enters., Inc. v. Buffalo's Franchise Concepts, Inc.*, 117 F.Supp.2d 1357, 1362 (N.D.Ga.2000). Accordingly, **Summary Judgment is denied** as to those claims.

## D. Unjust Enrichment Claims

As with the RICO claims, there must be an underlying fraud claim for a plaintiff to prevail on an unjust enrichment claim and to seek a constructive trust. *See* O.C.G.A. §§ 23–1–4; *Lee v. Lee*, 260 Ga. 356, 392 S.E.2d 870, 871 (1990). Contrary to Defendant's assertions, summary judgment on this claim is not appropriate merely because Plaintiff is prohibited under Georgia law from *recovering* under a breach of contract theory and an unjust enrichment theory. "At trial the jury will be instructed that [Plaintiff] may recover on [his fraud claim] or unjust enrichment claim only if the jury finds that there was no breach of contract. Furthermore, [Plaintiff] cannot recover under both [fraud] and unjust enrichment but will be required at trial to elect under which of these remedies it wishes to proceed." *Original Appalachian Artworks, Inc. v. Schlaifer Nance & Co.*, 679 F.Supp. 1564, 1579 (N.D.Ga.1987).

The Court has determined that Plaintiff presented sufficient evidence to create a material issue of fact regarding whether Defendant defrauded Plaintiff through the life insurance contract in question. Further, constructive trusts are not ordinarily imposed and thus may not be proper in this case involving fraud and RICO claims.

Fraud and RICO claims are legal claims and constructive trusts are imposed as a matter of equity. *See Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507 (11th Cir.1994) (impropriety of a court to seize unrelated assets to satisfy a nonequitable money judgment). Accordingly, **Summary Judgment** is **denied** on the Unjust Enrichment Claims.

## V. Conclusion

For these reasons, **Summary Judgment** is **DENIED on all claims.**